UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

James Kevin Kergil, )
        Petitioner )
    )
v. )  Case No. 12-cr-00152-CM
    )
United States of America, )
        Respondent. )
    )

RECEIVED FEB 16 2017 CHAMBERS OF COLLEEN McMAHON

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION TO REDUCE HIS
SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(2)**

PETITIONER, James Kevin Kergil, (hereinafter I, me, Petitioner) hereby responds to the government's opposition brief (Doc. 417), which opposes Petitioner's motions pursuant to §3582(c)(2), and Rule 60(b)(6). (Docs. 415 and 416).

Before responding to the government's argument, I wish to thank Your Honor and the Clerk of the Court for establishing a separate docket for my case, separate and apart from Mr. Binday. I have several other motions pending that are not currently addressed by the government, and after the government responds to those separately docketed motions, I will reply to them as well. It is extremely helpful to my family in trying to follow my case and to help me in replying based on the filings on PACER. Thank you and Your Honor's clerks.

Second, I would like to thank the government for pointing out that it is Sentencing Guidelines Amendment 792 and not 791 that I am trying to get this Court to recognize as a "clarifying amendment" that would be retroactive. See *United States v. Sabbeth*, 277 F.3d 94 (2d Cir. 2002) and *United States v. Amico*, 573 F.3d 150 (2d Cir. 2009). As the Second Circuit has made clear: "a defendant sentenced under one version may be given the benefit of a later revision if the revision represents not a substantive but merely a clarification of the United States Sentencing Commissions' prior intent." *Sabbeth*, 277 F.3d at 96.

As the government realizes, Amendment 792 does nothing substantive and merely adopts the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011), and clarifies and settles a dispute amongst circuits as to what is "intended" loss for the purposes of the Sentencing Guidelines, and as Your Honor knows, the government failed to allege, much less prove that I "intended" to harm anyone, let alone "intending" to cause $32 million to $40 million of harm. Contrary to the government's new allegations, there is absolutely no proof that I received any part of the commissions that were payable to Binday's Agency, known as Advocate Brokerage. I received nothing from the carriers on the cases discussed at trial or in the indictment, and as the Second Circuit's recent decision in *United States v. Algahaim*, No. 15-2024 (2d Cir. 2016) shows, there is something wrong with 6 levels for the fraud and another 22 levels for the amount of loss.

As was determined in the Ninth Circuit's decision in *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016), there are three situations that make a Sentencing Guidelines Amendment retroactive: (1) whether the amendment is listed as a retroactive amendment in U.S.S.G. § 1B1.10(c); (2) whether the amendment is characterized as a clarification; and (3) whether the amendment resolves a circuit split. *Quintero-Leyva*, 823 F.3d at 522. I truly appreciate the government pointing out the difference between Amendment 791 and 792 because if Amendment 794 was determined to be a "clarifying amendment" then clearly just the language and the policy statements concerning 792 are far superior to the language of 794 in being a "clarifying" amendment. If 792 is a clarifying amendment, then §3582(c)(2) is the proper procedure to ask Your Honor to reduce my sentence.

Not only is the Lexis law computer here at Canaan a cruel joke, it is not updated for months. It will be several months before I can read the December 16, 2016 decision in *United*

*States v. Perez*, No. 08-cr-00429-06(DLC) (S.D.N.Y. Dec. 16, 2016) for myself. Though I have not read the *Perez* decision, the government should realize that everyone, including Perez, sought relief under 794 pursuant to a 2255 petition, and they were all told -- including Perez -- that they should have not done a 2255, but instead a §3582(c)(2). What I know about 2255 is that it is only for constitutional violations, not procedural, and you can only do one. If I was to do a 2255 and lose on a procedural issue, then I would need to get a Certificate of Appealability before I could do a second or successive 2255. I have a number of friends here at Canaan, and no one has ever had a successful 2255. On the other hand, I know at least two dozen people that had their sentence reduced under a §3582 filing (Amendment 782 for drug cases, which, granted, was clearly retroactive). But, just from the odds, I would say that §3582 and appealing to Your Honor to say that 792 and 794 are both clarifying amendments has a far better chance of success than a 2255, just from the little bit of the law that I have learned in prison.

I do not wish to get into a point-for-point discussion of the government's many misstatements in its brief, but suffice it to say, the government is blatantly misstating and misrepresenting the facts of the cases they mention. Like most of the agents involved, I signed paperwork assigning any and all commissions to the Binday Agency. The government has confused me with Mark Resnick, and not only did I not work in Florida or recruit agents in Florida, I have only been to Florida once in my life, and it was not working for Mr. Binday. But, aside from these particular points, I am willing to argue each and every point even though I am at a great disadvantage because I have no exhibits, transcripts, and absolutely no documentation here. I have only my memory to defend against the government's many misstatements and mischaracterizations. But why bother? If I refute each and every mistake and misstatement made by the government, it will be to no avail if Your Honor does not decide 792 and/or 794 to be

clarifying amendments. If Your Honor decides they are clarifying amendments, I will be happy to submit detailed affidavits pointing out the government's many errors.

That, of course, leads to the government's dismissal of the *Takhalov* decision by the Eleventh Circuit. See *United States v. Takhalov*, ___ F.3d ___, 2016 U.S. App. LEXIS 12664 (11th Cir. 2016). I urge Your Honor to read the case; it is a well-reasoned assessment of the law of mail and wire fraud in the Second Circuit. The Parable of the Deceitful Neighbor is about far more than jury instructions. Once again, I am grateful to Your Honor for reviewing this motion, and if Your Honor reads *Takhalov*, you will see that the Binday scheme was a "scheme to deceive" the carriers into issuing policies that they might not normally issue. The scheme was then to pay them $60-70 million in premiums, not to "harm" them as is required for it to be a scheme to defraud. There is no case anywhere where the deceiver paid the deceived and had it called fraud.

Finally, I just want to conclude with a quote from a case cited by the government in its brief, *Matarese v. LeFevre*, 801 F.2d 98 (2d Cir. 1986), for the proposition that Rule 60(b)(6) has no application in the criminal law (is not "cognizable" in the criminal law despite the fact *Matarese* itself is a criminal case):

> Subpart (6), invoked by Matarese, "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *Id.* at 106, citing numerous cases including *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977).

Therefore, I respectfully implore the Court to use its broad discretion to grant relief on one or both of my current motions.

Respectfully Submitted on February 15, 2017,

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan, P.O. Box 200
Waymart, PA 18472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Kevin Kergil, )<br>Petitioner )<br> )<br>v. )<br> )<br>United States of America, )<br>Respondent. )<br>_____ ) | Case No. 12-cr-00152-CM |

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION TO REDUCE HIS SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(2)**

PETITIONER, James Kevin Kergil, (hereinafter I, me, Petitioner) hereby responds to the government's opposition brief (Doc. 417), which opposes Petitioner's motions pursuant to §3582(c)(2), and Rule 60(b)(6). (Docs. 415 and 416).

Before responding to the government's argument, I wish to thank Your Honor and the Clerk of the Court for establishing a separate docket for my case, separate and apart from Mr. Binday. I have several other motions pending that are not currently addressed by the government, and after the government responds to those separately docketed motions, I will reply to them as well. It is extremely helpful to my family in trying to follow my case and to help me in replying based on the filings on PACER. Thank you and Your Honor's clerks.

Second, I would like to thank the government for pointing out that it is Sentencing Guidelines Amendment 792 and not 791 that I am trying to get this Court to recognize as a "clarifying amendment" that would be retroactive. See *United States v. Sabbeth*, 277 F.3d 94 (2d Cir. 2002) and *United States v. Amico*, 573 F.3d 150 (2d Cir. 2009). As the Second Circuit has made clear: "a defendant sentenced under one version may be given the benefit of a later revision if the revision represents not a substantive but merely a clarification of the United States Sentencing Commissions' prior intent." *Sabbeth*, 277 F.3d at 96.

As the government realizes, Amendment 792 does nothing substantive and merely adopts the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011), and clarifies and settles a dispute amongst circuits as to what is "intended" loss for the purposes of the Sentencing Guidelines, and as Your Honor knows, the government failed to allege, much less prove that I "intended" to harm anyone, let alone "intending" to cause $32 million to $40 million of harm. Contrary to the government's new allegations, there is absolutely no proof that I received any part of the commissions that were payable to Binday's Agency, known as Advocate Brokerage. I received nothing from the carriers on the cases discussed at trial or in the indictment, and as the Second Circuit's recent decision in *United States v. Algahaim*, No. 15-2024 (2d Cir. 2016) shows, there is something wrong with 6 levels for the fraud and another 22 levels for the amount of loss.

As was determined in the Ninth Circuit's decision in *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016), there are three situations that make a Sentencing Guidelines Amendment retroactive: (1) whether the amendment is listed as a retroactive amendment in U.S.S.G. § 1B1.10(c); (2) whether the amendment is characterized as a clarification; and (3) whether the amendment resolves a circuit split. *Quintero-Leyva*, 823 F.3d at 522. I truly appreciate the government pointing out the difference between Amendment 791 and 792 because if Amendment 794 was determined to be a "clarifying amendment" then clearly just the language and the policy statements concerning 792 are far superior to the language of 794 in being a "clarifying" amendment. If 792 is a clarifying amendment, then §3582(c)(2) is the proper procedure to ask Your Honor to reduce my sentence.

Not only is the Lexis law computer here at Canaan a cruel joke, it is not updated for months. It will be several months before I can read the December 16, 2016 decision in *United*

*States v. Perez*, No. 08-cr-00429-06(DLC) (S.D.N.Y. Dec. 16, 2016) for myself. Though I have not read the *Perez* decision, the government should realize that everyone, including Perez, sought relief under 794 pursuant to a 2255 petition, and they were all told – including Perez – that they should have not done a 2255, but instead a §3582(c)(2). What I know about 2255 is that it is only for constitutional violations, not procedural, and you can only do one. If I was to do a 2255 and lose on a procedural issue, then I would need to get a Certificate of Appealability before I could do a second or successive 2255. I have a number of friends here at Canaan, and no one has ever had a successful 2255. On the other hand, I know at least two dozen people that had their sentence reduced under a §3582 filing (Amendment 782 for drug cases, which, granted, was clearly retroactive). But, just from the odds, I would say that §3582 and appealing to Your Honor to say that 792 and 794 are both clarifying amendments has a far better chance of success than a 2255, just from the little bit of the law that I have learned in prison.

I do not wish to get into a point-for-point discussion of the government's many misstatements in its brief, but suffice it to say, the government is blatantly misstating and misrepresenting the facts of the cases they mention. Like most of the agents involved, I signed paperwork assigning any and all commissions to the Binday Agency. The government has confused me with Mark Resnick, and not only did I not work in Florida or recruit agents in Florida, I have only been to Florida once in my life, and it was not working for Mr. Binday. But, aside from these particular points, I am willing to argue each and every point even though I am at a great disadvantage because I have no exhibits, transcripts, and absolutely no documentation here. I have only my memory to defend against the government's many misstatements and mischaracterizations. But why bother? If I refute each and every mistake and misstatement made by the government, it will be to no avail if Your Honor does not decide 792 and/or 794 to be

clarifying amendments. If Your Honor decides they are clarifying amendments, I will be happy to submit detailed affidavits pointing out the government's many errors.

That, of course, leads to the government's dismissal of the *Takhalov* decision by the Eleventh Circuit. See *United States v. Takhalov*, ___ F.3d ___, 2016 U.S. App. LEXIS 12664 (11th Cir. 2016). I urge Your Honor to read the case; it is a well-reasoned assessment of the law of mail and wire fraud in the Second Circuit. The Parable of the Deceitful Neighbor is about far more than jury instructions. Once again, I am grateful to Your Honor for reviewing this motion, and if Your Honor reads *Takhalov*, you will see that the Binday scheme was a "scheme to deceive" the carriers into issuing policies that they might not normally issue. The scheme was then to pay them $60-70 million in premiums, not to "harm" them as is required for it to be a scheme to defraud. There is no case anywhere where the deceiver paid the deceived and had it called fraud.

Finally, I just want to conclude with a quote from a case cited by the government in its brief, *Matarese v. LeFevre*, 801 F.2d 98 (2d Cir. 1986), for the proposition that Rule 60(b)(6) has no application in the criminal law (is not "cognizable" in the criminal law despite the fact *Matarese* itself is a criminal case):

> Subpart (6), invoked by Matarese, "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *Id.* at 106, citing numerous cases including *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977).

Therefore, I respectfully implore the Court to use its broad discretion to grant relief on one or both of my current motions.

Respectfully Submitted on February 15, 2017,

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan, P.O. Box 200
Waymart, PA 18472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Kevin Kergil,<br>   Petitioner<br><br>v.<br><br>United States of America,<br>   Respondent. | )<br>)<br>)<br>)  Case No. 12-cr-00152-CM<br>)<br>)<br>) |

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION TO REDUCE HIS SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(2)**

PETITIONER, James Kevin Kergil, (hereinafter I, me, Petitioner) hereby responds to the government's opposition brief (Doc. 417), which opposes Petitioner's motions pursuant to §3582(c)(2), and Rule 60(b)(6). (Docs. 415 and 416).

Before responding to the government's argument, I wish to thank Your Honor and the Clerk of the Court for establishing a separate docket for my case, separate and apart from Mr. Binday. I have several other motions pending that are not currently addressed by the government, and after the government responds to those separately docketed motions, I will reply to them as well. It is extremely helpful to my family in trying to follow my case and to help me in replying based on the filings on PACER. Thank you and Your Honor's clerks.

Second, I would like to thank the government for pointing out that it is Sentencing Guidelines Amendment 792 and not 791 that I am trying to get this Court to recognize as a "clarifying amendment" that would be retroactive. See *United States v. Sabbeth*, 277 F.3d 94 (2d Cir. 2002) and *United States v. Amico*, 573 F.3d 150 (2d Cir. 2009). As the Second Circuit has made clear: "a defendant sentenced under one version may be given the benefit of a later revision if the revision represents not a substantive but merely a clarification of the United States Sentencing Commissions' prior intent." *Sabbeth*, 277 F.3d at 96.

As the government realizes, Amendment 792 does nothing substantive and merely adopts the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011), and clarifies and settles a dispute amongst circuits as to what is "intended" loss for the purposes of the Sentencing Guidelines, and as Your Honor knows, the government failed to allege, much less prove that I "intended" to harm anyone, let alone "intending" to cause $32 million to $40 million of harm. Contrary to the government's new allegations, there is absolutely no proof that I received any part of the commissions that were payable to Binday's Agency, known as Advocate Brokerage. I received nothing from the carriers on the cases discussed at trial or in the indictment, and as the Second Circuit's recent decision in *United States v. Algahaim*, No. 15-2024 (2d Cir. 2016) shows, there is something wrong with 6 levels for the fraud and another 22 levels for the amount of loss.

As was determined in the Ninth Circuit's decision in *United States v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016), there are three situations that make a Sentencing Guidelines Amendment retroactive: (1) whether the amendment is listed as a retroactive amendment in U.S.S.G. § 1B1.10(c); (2) whether the amendment is characterized as a clarification; and (3) whether the amendment resolves a circuit split. *Quintero-Leyva*, 823 F.3d at 522. I truly appreciate the government pointing out the difference between Amendment 791 and 792 because if Amendment 794 was determined to be a "clarifying amendment" then clearly just the language and the policy statements concerning 792 are far superior to the language of 794 in being a "clarifying" amendment. If 792 is a clarifying amendment, then §3582(c)(2) is the proper procedure to ask Your Honor to reduce my sentence.

Not only is the Lexis law computer here at Canaan a cruel joke, it is not updated for months. It will be several months before I can read the December 16, 2016 decision in *United*

*States v. Perez*, No. 08-cr-00429-06(DLC) (S.D.N.Y. Dec. 16, 2016) for myself. Though I have not read the *Perez* decision, the government should realize that everyone, including Perez, sought relief under 794 pursuant to a 2255 petition, and they were all told – including Perez – that they should have not done a 2255, but instead a §3582(c)(2). What I know about 2255 is that it is only for constitutional violations, not procedural, and you can only do one. If I was to do a 2255 and lose on a procedural issue, then I would need to get a Certificate of Appealability before I could do a second or successive 2255. I have a number of friends here at Canaan, and no one has ever had a successful 2255. On the other hand, I know at least two dozen people that had their sentence reduced under a §3582 filing (Amendment 782 for drug cases, which, granted, was clearly retroactive). But, just from the odds, I would say that §3582 and appealing to Your Honor to say that 792 and 794 are both clarifying amendments has a far better chance of success than a 2255, just from the little bit of the law that I have learned in prison.

I do not wish to get into a point-for-point discussion of the government's many misstatements in its brief, but suffice it to say, the government is blatantly misstating and misrepresenting the facts of the cases they mention. Like most of the agents involved, I signed paperwork assigning any and all commissions to the Binday Agency. The government has confused me with Mark Resnick, and not only did I not work in Florida or recruit agents in Florida, I have only been to Florida once in my life, and it was not working for Mr. Binday. But, aside from these particular points, I am willing to argue each and every point even though I am at a great disadvantage because I have no exhibits, transcripts, and absolutely no documentation here. I have only my memory to defend against the government's many misstatements and mischaracterizations. But why bother? If I refute each and every mistake and misstatement made by the government, it will be to no avail if Your Honor does not decide 792 and/or 794 to be

clarifying amendments. If Your Honor decides they are clarifying amendments, I will be happy to submit detailed affidavits pointing out the government's many errors.

That, of course, leads to the government's dismissal of the *Takhalov* decision by the Eleventh Circuit. See *United States v. Takhalov*, ___ F.3d ___, 2016 U.S. App. LEXIS 12664 (11th Cir. 2016). I urge Your Honor to read the case; it is a well-reasoned assessment of the law of mail and wire fraud in the Second Circuit. The Parable of the Deceitful Neighbor is about far more than jury instructions. Once again, I am grateful to Your Honor for reviewing this motion, and if Your Honor reads *Takhalov*, you will see that the Binday scheme was a "scheme to deceive" the carriers into issuing policies that they might not normally issue. The scheme was then to pay them $60-70 million in premiums, not to "harm" them as is required for it to be a scheme to defraud. There is no case anywhere where the deceiver paid the deceived and had it called fraud.

Finally, I just want to conclude with a quote from a case cited by the government in its brief, *Matarese v. LeFevre*, 801 F.2d 98 (2d Cir. 1986), for the proposition that Rule 60(b)(6) has no application in the criminal law (is not "cognizable" in the criminal law despite the fact *Matarese* itself is a criminal case):

> Subpart (6), invoked by Matarese, "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *Id.* at 106, citing numerous cases including *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977).

Therefore, I respectfully implore the Court to use its broad discretion to grant relief on one or both of my current motions.

Respectfully Submitted on February 15, 2017,

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan, P.O. Box 200
Waymart, PA 18472