UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

        Plaintiff,

  -against-                                   12 Cr. 152 (CM)

KEVIN KERGIL,

        Defendant.
------------------------------------------------------------x

**DECISION AND ORDER ON DEFENDANT'S MOTIONS SEEKING RELIEF FROM HIS CRIMINAL CONVICTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) AND FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582 (C) (2)**

McMahon, C.J.:

On October 7, 2013, following a twelve-day jury trial before this Court, Kergil and his two co-defendants, Michael Binday and Mark Resnick, were found guilty of conspiracy to commit mail and wire fraud, in violation of Title 18, United States Code, Section 1349; mail fraud, in violation of Title 18, United States Code, Section 1341; and wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with a scheme to defraud insurance companies which the defendants purported to serve as agents. Kergil and Resnick were also found guilty of conspiring to obstruct justice through destruction of records, in violation of Title 18, United States Code, Section 1512(k).

On July 30, 2014, the Court sentenced Kergil to 108 months' imprisonment, to be followed by three years' supervised release. The Court also ordered substantial forfeiture and restitution.

On October 26, 2015, the Second Circuit affirmed the convictions and sentences of Kergil and his co-defendants, directing only a limited remand, at the Government's request, for

1

entry of an amended restitution order in a reduced amount of $37,433,914.17. *See United States v. Binday*, 804 F.3d 558, 601 (2d Cir. 2015). On December 14, 2015, the Second Circuit denied the defendants' motions for panel and *en banc* rehearing. On June 20, 2016, the Supreme Court denied Kergil's and Binday's petitions for a writ of *certiorari*. On June 24, 2016, this Court entered the amended restitution order that the Second Circuit had directed be entered. Shortly thereafter, Kergil began serving his sentence.

Before the Court are Kergil's motions filed pursuant to Federal Rule of Civil Procedure 60(b)(6) and Title 18, United States Code, Section 3582(c)(2). Kergil subsequently filed a "Motion To Vacate Conviction and Reduce Sentence," pursuant to 28 U.S.C. § 2255. *See Kergil v. United States*, 17 CV 4675 (CM). The § 2255 motion is not yet fully briefed.

Defendant's Rule 60(b) Motions

Defendant agues in his Rule 60(b) motions that *inter alia* (1) there was insufficient evidence of his "specific intent to defraud or cause any harm to the" Insurers (Mot. 60(b) No. 1 at 1, 7; Mot. 60(b)(6) No. 2 at 16-17); (2) there was insufficient evidence of his intent to join the charged conspiracy (Mot. 60(b) No. 1 at 2-3); and, (3) the scheme the Government alleged in the indictment and proved at trial was a scheme to deceive rather than to defraud and thus not cognizable under the wire or mail fraud statutes (Mot. 60(b) No. 2 at 1-4, 7-16).

Rule 60(b)(6) is a rule of civil—not criminal—procedure that permits a court to relieve a party from a civil judgment for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6).[1] It cannot be used to reopen or challenge criminal judgments. *See Gitten v. United States*, 311 F.3d 529, 534 (2d Cir. 2002) (new attacks on an underlying conviction "are beyond the scope of Rule 60(b)"). The procedural vehicle available to Kergil for collaterally attacking his criminal

---

[1] Even in civil cases, application of Rule 60(b)(6) is limited to "extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986).

2

judgment is a motion for habeas corpus pursuant to Section 2255. *See United States* v. *Bastien*, 2013 WL 1701601, at *6. Because Kergil is acting *pro se*, the Court may construe his procedurally improper Rule 60(b)(6) motions as a motion pursuant to Section 2255. *See id.* ("When a *pro se* litigant files a postconviction motion unsuccessfully seeking relief under a certain provision of the law, a court may construe that motion as one brought pursuant to [Section 2255] without requiring the litigant to re-plead."). Before doing so, however, the Court would have to alert Kergil to its intent to recharacterize, warn him that subsequent Section 2255 motions will be subject to the "second and successive" restrictions on such motions, and provide him with an opportunity to withdraw or amend his filing. *Id.* Converting Kergil's procedurally improper 60(b) motions into a § 2255 motion would make no sense in the present case, since Kergil has now filed a § 2255 motion that incorporates the arguments propounded in the present motions.

Accordingly, Kergil's Rule 60(b) motions are denied as improper filings.

The Court notes that, even if the Court were to give Kergil the opportunity to have his Rule 60(b) motions treated as a Section 2255 motion and if Kergil were to accede to the recharacterization (a procedure the Court is <u>not</u> following in this case), his attacks on his conviction would still fail. The arguments in his motions are all foreclosed from consideration on collateral review, because each was squarely addressed and rejected by the Second Circuit on direct appeal. *See, e.g.*, *United States* v. *Yeagley*, No. 13 Civ. 2561 (KMK), 2017 WL 76903, at *5 (S.D.N.Y. Jan. 3, 2017) (applying long-standing "mandate rule," which "bars re-litigation of issues or claims that were resolved, explicitly or implicitly, on direct appeal"); *see also Burrell* v. *United States*, 467 F.3d 160, 165 (2d Cir. 2006) (discussing mandate rule). And even if the mandate rule did not preclude collateral review his claims would be denied nonetheless as meritless for the same reasons the Second Circuit found them meritless on direct review.

Defendant's Motion for Resentencing Pursuant to 18 U.S.C. 3582(c)(2)

Kergil asks that the Court resentence him to a reduced sentence pursuant 18 U.S.C. 3582(c)(2), in light of Guidelines Amendments 794 (addressing minor role adjustment) and 792 (addressing, among other things, intended loss assessment under U.S.S.G. § 2B1.1).[2]

Section 3582(c)(2) allows a court to modify a sentence "when a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Commission's policy statements are set forth in U.S.S.G. § 1B1.10 ("Section 1B1.10"), which makes plain that "a reduction in the defendant's term of imprisonment is not consistent with this policy statement and is not authorized under 18 U.S.C. § 3582(c)(2)" unless the amendment invoked is listed in subsection (d) of Section 1B1.10. U.S.S.G. § 1B1.10(a)(2)(A).

Since neither Amendment 792 nor Amendment 794 is listed in subsection (d) of Section 1B1.10, those amendments do not afford Kergil a basis to seek a sentence reduction under Section 3582(c)(2). *See United States* v. *Morales*, No. 11 Cr. 881 (DLC), 2016 WL 6426394, at *2 (S.D.N.Y. Oct. 27, 2016) (holding that district court lacks authority to reduce a sentence based on an amendment—in that case, Amendment 794—not listed in subsection (d) of Section 1B1.10).

Even if Kergil were able to invoke the amendments he cites, they would afford no basis for a sentence reduction in his case. As for Amendment 794, Kergil's claim to entitlement to an adjustment for his purportedly "minimal" or "minor" role in the offense under the newly

---

[2] Although Kergil claims to be invoking Amendment 791 (which simply adjusts the loss tables based on inflation), it is clear from his briefing that he is in fact seeking to invoke Amendment 792. (*See* Mot. Resentencing at 4-10 (discussing Sentencing Commission's adoption of intended loss approach from *United States v Manatau*, 647 F.3d 1048 (10th Cir. 2011), which is reflected in Amendment 792 rather than 791)).

4

amended commentary to U.S.S.G. § 3B1.2 has no merit. Kergil did not seek, nor could he plausibly have sought, any minor role adjustment at sentencing. Among the facts that precluded such an adjustment, and instead warranted an aggravating role *enhancement* under U.S.S.G. § 3B1.1 (which the Court in fact applied), were: Kergil's management and supervision of other field agents in the conspiracy; the fact that he took a cut of field agents' commissions; his orchestration of the false financial statements supporting the fraudulent insurance applications; his recruitment of corrupt financial professionals and inspectors to manufacture false financials; his coaching of field agents, Straw Insureds, and other scheme participants to tell lies to Insurers; and his directive to two co-conspirator field agents to destroy evidence of the scheme when the FBI began investigating. These are the actions of a major participant, not a minimal or minor one, and nothing in Amendment 794 alters that.

Nor is there any truth to Kergil's assertion that he was simply a cog in codefendant Binday's machine, who had "no proprietary interest in the criminal activity and . . . [wa]s simply being paid to perform certain tasks." U.S.S.G. § 3B1.2, cmt. n.3 (as amended). Kergil was integral to scheme, skimmed others' commissions, and personally made nearly two million dollars in death benefits paid out on two Straw Insureds' fraudulently procured policies. Kergil recruited one Straw Insured, Hanni Lennard, to the STOLI scheme, and managed with Binday's help to secure two $2 million policies on her life. (GX 1677, 1621, 1667). Kergil worked with Binday to coach Lennard to lie about her financials if approached by an Insurer. (GX 1687 (Kergil email to Binday confirming he had spoken with Lennard's daughter about making sure she did not speak to any insurer; Binday admonition that "[i]f she does speak to anyone, she should be consistent with the financials" Kergil had prepared); GX 1703 (false net worth and income worksheet)). When Lennard died, Kergil and Binday schemed to ensure that each got a massive cut of one Insurer's death benefit: with $343,000 going to Binday and over $1 million

5

going to Kergil. (GX 1720; GX 1654; GX 1698; GX 2670 at 7, 11, 41, 45, 84 (withdrawal of $1 million and purchase of cashier's check in amount of $1,000,472.18); *id.* at 30 (statement showing check of $306,245.02 paid out); GX 2659-A at 302-03 (cashier's checks in amounts of $1,000,472.18 and $306,245.02 deposited into personal account Kergil held jointly with his mother); GX 2659 at 268 (deposit of $1.3 million into Kergil's personal account); GX 5004 (stipulation that on or about March 13, 2012, Kergil paid $343,143.59 for the benefit of Binday from the personal account he held with his mother)). Kergil then made $900,000 upon the death of another Straw Insured, Doris Riviere, after he, Binday, and a third person scrambled to "invest" in the fraudulently-procured policy on the eve of the insured's death. (*See* GX 2659 at 226; GX 2693 at 5, 6; GX 2671 at 1; Tr. 1156-59). Plainly, Kergil had a proprietary interest in the scheme. Amendment 794 therefore has no application.

Amendment 792 is no more helpful to Kergil. This Court did not sentence Kergil based on loss amount, and indeed specifically rejected an "intended loss" approach even to calculating the Guidelines in the first instance. Moreover, even if the Court had adopted an intended loss measure, its analysis no doubt would have comported with Amendment 792, which reflects adoption of the same "subjective" measure of intended loss that has long been standard in the Second Circuit and was in fact urged by the Government in this very case. *See* Amendment 792 (*citing United States* v. *Confredo*, 528 F.3d 143, 152 (2d Cir. 2008), as comporting with the amended commentary).

Accordingly, Kergil's motion for resentencing pursuant to Section 3582(c)(2) is denied.

This constitutes the decision and order of the Court.

August 15, 2017

*[signature]*

Colleen McMahon
Chief District Court Judge

By ECF to All Parties and First Class Mail to Defendant.