# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Kevin Kergil,<br>　　　　　　Petitioner<br><br>v.<br><br>United States of America,<br>　　　　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. 12-cr-00152-CM |

## DEFENDANT JAMES KEVIN KERGIL'S MOTION FOR RECONSIDERATION PURSUANT TO LOCAL RULE 49.1(d)

NOW COMES James Kevin Kergil, the Defendant in the above-captioned case to petition this Honorable Court to reconsider its August 18, 2017 decision pursuant to Local Criminal Rule 49.1(d), concerning my motion pursuant to 18 U.S.C. §3582 to reduce my sentence because of the changes in the Sentencing Guidelines concerning the amount of loss in "White-Collar" crimes (Amendment 792), and my role as a minor player in the *"Binday"* scheme (Amendment 794).

## PRELIMINARY STATEMENT

First and foremost, I want to thank the Court for ruling on my motions and ordering the government to respond to my 2255 Petition. My fear was that my motions had been lost in the *Binday* shuffle. As the government noted, Mr. Binday is up to his seventh or eighth attorney in this case, while I have had only one and I now am submitting these motions *pro se.* Second, I did not receive notice of the Court's decision until this week and I realize there is a 14 day limit on Local Rule 49.1(d), which is why I am having friends outside of the prison send this in because there is a big inspection happening at Canaan and I am currently unable to enter our unit.

I beg the Court's indulgence if this Motion for Reconsideration does not arrive within the 14 day limit.

Third, I wish to draw the Court's attention to not only Judge Lynch's opinion for the Second Circuit in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), but also other recent Second Circuit cases that the Court may have overlooked, and testimony that the Court heard but might have forgotten. The evidence presented at trial was clear and unequivocal, Mr. Binday controlled the investors, the applications, and the insureds. For my efforts in the so-called "Binday Scheme", I received only $600,000 in compensation for services rendered to the Binday Agency. The alleged crime was depriving the carriers of their right to control their assets by depriving them of allegedly valuable economic information. The situations that Your Honor refers to in the decision are people that were friends of mine that I actually helped to benefit from the policies on their lives. If someone like Joseph Collins can receive only a year for the billion dollar REFCO fraud (see *United States v. Collins*, 581 Fed. Appx. (2d. Cir 2014)), and Raj Gupta could receive only two years for the $350 million insider trading scandal (see *United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014)), then I feel that I have been over-sentenced by a wide margin, and would respectfully ask this Court to grant my Motion for Reconsideration and reduce my sentence to two years based on Raj Gupta, who was just featured in a *Wall Street Journal* article this past week now that he is out of prison.

## I.   POINTS OVERLOOKED BY THE COURT

Judge Lynch, in writing for the Second Circuit, makes it clear that the money or property sought by Binday was the commissions issued on the policies, and Judge Lynch also makes it clear if the *Binday* scheme was just getting the carriers to issue policies they might not normally issue, that would not be mail or wire fraud:

"Misrepresentations amounting only to a deceit are insufficient" to support conviction for mail or wire fraud because "the deceit must be coupled with a contemplated harm to the victim." *Starr*, 816 F.2d at 98. "Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *Binday* at 578.

While I respectfully disagree with Judge Lynch on the "right to control assets" theory of fraud, that is not what this Motion is about. Mr. Binday's investors put in $65-70 million of premiums to create the commissions and the death benefits that caused the $32 million in losses in this case. But, the crime was the lying to the carriers on the applications and for that part of the crime, I received a total of $600,000 from Binday's Brokerage Agency. Judge Lynch is very clear that Binday controlled everything and received 100% of the commissions. The Court also overlooked the testimony of Tracy Robinson who testified that she took instructions from Mr. Binday and Mr. Binday alone, and that she and the other employees of Binday's Agency processed 100% of the applications in this case. There was no "conspiracy" here; Binday was the boss and the so-called "Mastermind", which leads to the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

*Honeycutt* is important for two reasons. In its unanimous decision, the Supreme Court discussed the definition of the word "obtain" and said that property for the purposes of a crime must actually be "obtained" or "acquired" by the person committing the crime for the purposes of forfeitures. But, Justice Sotomayor goes a step further in describing the analogy of the "Student and the Mastermind" growing marijuana on a college campus. The Mastermind collects $3 million in unlawful profits but pays the student only $300 per month for a grand total of $3,600. While the Mastermind (Binday) might be responsible for the entire $32,000,000 of losses in this case, the Student (Kergil) should only be responsible for only $600,000 in losses

and I should have been sentenced on that basis – under the new Sentencing Guideline Amendment.

Judge Patti Saris, Chair of the Sentencing Commission, made the same points in discussing the *Collins* case and the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011) for White-Collar fraud losses under Amendments 791 and 792 and she also uses a "farmer analogy" under Amendment 794 for a person having a minor role in a criminal enterprise. While I know Your Honor believes that I am guilty of a crime, I should only have been sentenced based on a minor role and only based on $600,000 of losses. It makes no sense to sentence both me and the "Mastermind" Binday on the same $32 million when his Agency received 100% of the commissions that Judge Lynch said was the property in this case.

## II.    ALGAHAIM AND FINAZZO

Respectfully, the Court also overlooked the Second Circuit's decisions in *United States v. Algahaim*, 842 F.3d 769 (2d Cir. 2016) and *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017). In *Algahaim*, two defendants pled guilty to fraud and received sentences of **30** months and **21** months for Food Stamp (SNAP) fraud. While the Second Circuit affirmed their convictions, the Second Circuit remanded the case back to the District Court to consider a Non-Guidelines sentence. There are many other examples that I believe the Court has overlooked and should examine in this regard, but suffice it to say that, while the Court may find me guilty of mail and wire fraud, the amount I actually "obtained" suggests that I should have received a much lower sentence.

Finally, this brings me to the Second Circuit's recent decision in *Finazzo*, where Finazzo really was ripping off his employer to the tune of $14 million by directing business to his secretly-owned company. The Second Circuit's decision in *Finazzo* goes to great lengths to

4

discuss the "tangible harm" theory of *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994), where a consultant for a Long Island village did not disclose his personal interest in a piece of property just like how Finazzo did not disclose that he secretly owned a supplier for Aéropostale that he directed business to.   While I will save my arguments on *Mittelstaedt* for my 2255, I respectfully ask the Court to review the Second Circuit's opinion in *Finazzo* to see that Finazzo really did receive over $14 million from his secret business interests and received a very stiff eight year sentence.   There are some very interesting quotes from *Finazzo* that I look forward to bringing to the Court's attention in my 2255 Reply Brief, but it makes no sense that I should be sentenced to nine years in a scheme where the carriers actually profited from the policies all lapsing and Binday's firm kept all of the commissions.   Please also see *United States v. Bryson*, 2015 WL4619637 (2015) and *United States v. Hixon*, where a well-known hedge fund manager indicted for $300 million in losses and a well-known Evercore partner convicted of insider trading each received a sentence of 30 months. I believe I am entitled to have my sentencing reviewed under Section 3582 and that the Court has the power to grant this Motion for Reconsideration and then to review my sentence based on recent cases the Court may have overlooked.

I wish to thank the Court again for reviewing my Motions, and ordering the government to respond to my 2255 Petition.

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan
P.O. Box 200
Waymart, PA 18472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Kevin Kergil,           ) <br>          Petitioner   ) <br>                        ) <br> v.                    ) <br>                        ) <br> United States of America,   ) <br>         Respondent.  ) | Case No. 12-cr-00152-CM |

**DEFENDANT JAMES KEVIN KERGIL'S MOTION FOR RECONSIDERATION
PURSUANT TO LOCAL RULE 49.1(d)**

NOW COMES James Kevin Kergil, the Defendant in the above-captioned case to petition this Honorable Court to reconsider its August 18, 2017 decision pursuant to Local Criminal Rule 49.1(d), concerning my motion pursuant to 18 U.S.C. §3582 to reduce my sentence because of the changes in the Sentencing Guidelines concerning the amount of loss in "White-Collar" crimes (Amendment 792), and my role as a minor player in the *"Binday"* scheme (Amendment 794).

**PRELIMINARY STATEMENT**

First and foremost, I want to thank the Court for ruling on my motions and ordering the government to respond to my 2255 Petition. My fear was that my motions had been lost in the *Binday* shuffle. As the government noted, Mr. Binday is up to his seventh or eighth attorney in this case, while I have had only one and I now am submitting these motions *pro se*. Second, I did not receive notice of the Court's decision until this week and I realize there is a 14 day limit on Local Rule 49.1(d), which is why I am having friends outside of the prison send this in because there is a big inspection happening at Canaan and I am currently unable to enter our unit.

1

I beg the Court's indulgence if this Motion for Reconsideration does not arrive within the 14 day limit.

Third, I wish to draw the Court's attention to not only Judge Lynch's opinion for the Second Circuit in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), but also other recent Second Circuit cases that the Court may have overlooked, and testimony that the Court heard but might have forgotten. The evidence presented at trial was clear and unequivocal, Mr. Binday controlled the investors, the applications, and the insureds. For my efforts in the so-called "Binday Scheme", I received only $600,000 in compensation for services rendered to the Binday Agency. The alleged crime was depriving the carriers of their right to control their assets by depriving them of allegedly valuable economic information. The situations that Your Honor refers to in the decision are people that were friends of mine that I actually helped to benefit from the policies on their lives. If someone like Joseph Collins can receive only a year for the billion dollar REFCO fraud (see *United States v. Collins*, 581 Fed. Appx. (2d. Cir 2014)), and Raj Gupta could receive only two years for the $350 million insider trading scandal (see *United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014)), then I feel that I have been over-sentenced by a wide margin, and would respectfully ask this Court to grant my Motion for Reconsideration and reduce my sentence to two years based on Raj Gupta, who was just featured in a *Wall Street Journal* article this past week now that he is out of prison.

## I.      POINTS OVERLOOKED BY THE COURT

Judge Lynch, in writing for the Second Circuit, makes it clear that the money or property sought by Binday was the commissions issued on the policies, and Judge Lynch also makes it clear if the *Binday* scheme was just getting the carriers to issue policies they might not normally issue, that would not be mail or wire fraud:

"Misrepresentations amounting only to a deceit are insufficient" to support conviction for mail or wire fraud because "the deceit must be coupled with a contemplated harm to the victim." *Starr*, 816 F.2d at 98. "Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *Binday* at 578.

While I respectfully disagree with Judge Lynch on the "right to control assets" theory of fraud, that is not what this Motion is about. Mr. Binday's investors put in $65-70 million of premiums to create the commissions and the death benefits that caused the $32 million in losses in this case. But, the crime was the lying to the carriers on the applications and for that part of the crime, I received a total of $600,000 from Binday's Brokerage Agency. Judge Lynch is very clear that Binday controlled everything and received 100% of the commissions. The Court also overlooked the testimony of Tracy Robinson who testified that she took instructions from Mr. Binday and Mr. Binday alone, and that she and the other employees of Binday's Agency processed 100% of the applications in this case. There was no "conspiracy" here; Binday was the boss and the so-called "Mastermind", which leads to the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

*Honeycutt* is important for two reasons. In its unanimous decision, the Supreme Court discussed the definition of the word "obtain" and said that property for the purposes of a crime must actually be "obtained" or "acquired" by the person committing the crime for the purposes of forfeitures. But, Justice Sotomayor goes a step further in describing the analogy of the "Student and the Mastermind" growing marijuana on a college campus. The Mastermind collects $3 million in unlawful profits but pays the student only $300 per month for a grand total of $3,600. While the Mastermind (Binday) might be responsible for the entire $32,000,000 of losses in this case, the Student (Kergil) should only be responsible for only $600,000 in losses

3

and I should have been sentenced on that basis – under the new Sentencing Guideline Amendment.

Judge Patti Saris, Chair of the Sentencing Commission, made the same points in discussing the *Collins* case and the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011) for White-Collar fraud losses under Amendments 791 and 792 and she also uses a "farmer analogy" under Amendment 794 for a person having a minor role in a criminal enterprise. While I know Your Honor believes that I am guilty of a crime, I should only have been sentenced based on a minor role and only based on $600,000 of losses. It makes no sense to sentence both me and the "Mastermind" Binday on the same $32 million when his Agency received 100% of the commissions that Judge Lynch said was the property in this case.

## II.    ALGAHAIM AND FINAZZO

Respectfully, the Court also overlooked the Second Circuit's decisions in *United States v. Algahaim*, 842 F.3d 769 (2d Cir. 2016) and *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017). In *Algahaim*, two defendants pled guilty to fraud and received sentences of **30** months and **21** months for Food Stamp (SNAP) fraud. While the Second Circuit affirmed their convictions, the Second Circuit remanded the case back to the District Court to consider a Non-Guidelines sentence. There are many other examples that I believe the Court has overlooked and should examine in this regard, but suffice it to say that, while the Court may find me guilty of mail and wire fraud, the amount I actually "obtained" suggests that I should have received a much lower sentence.

Finally, this brings me to the Second Circuit's recent decision in *Finazzo*, where Finazzo really was ripping off his employer to the tune of $14 million by directing business to his secretly-owned company. The Second Circuit's decision in *Finazzo* goes to great lengths to

discuss the "tangible harm" theory of *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994), where a consultant for a Long Island village did not disclose his personal interest in a piece of property just like how Finazzo did not disclose that he secretly owned a supplier for Aéropostale that he directed business to. While I will save my arguments on *Mittelstaedt* for my 2255, I respectfully ask the Court to review the Second Circuit's opinion in *Finazzo* to see that Finazzo really did receive over $14 million from his secret business interests and received a very stiff eight year sentence. There are some very interesting quotes from *Finazzo* that I look forward to bringing to the Court's attention in my 2255 Reply Brief, but it makes no sense that I should be sentenced to nine years in a scheme where the carriers actually profited from the policies all lapsing and Binday's firm kept all of the commissions. Please also see *United States v. Bryson*, 2015 WL4619637 (2015) and *United States v. Hixon*, where a well-known hedge fund manager indicted for $300 million in losses and a well-known Evercore partner convicted of insider trading each received a sentence of 30 months. I believe I am entitled to have my sentencing reviewed under Section 3582 and that the Court has the power to grant this Motion for Reconsideration and then to review my sentence based on recent cases the Court may have overlooked.

I wish to thank the Court again for reviewing my Motions, and ordering the government to respond to my 2255 Petition.

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan
P.O. Box 200
Waymart, PA 18472

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Kevin Kergil,          ) <br>       Petitioner  ) <br>                 ) <br> v.                  ) <br>                 ) <br> United States of America,  ) <br>       Respondent.  ) | Case No. 12-cr-00152-CM |

## DEFENDANT JAMES KEVIN KERGIL'S MOTION FOR RECONSIDERATION PURSUANT TO LOCAL RULE 49.1(d)

NOW COMES James Kevin Kergil, the Defendant in the above-captioned case to petition this Honorable Court to reconsider its August 18, 2017 decision pursuant to Local Criminal Rule 49.1(d), concerning my motion pursuant to 18 U.S.C. §3582 to reduce my sentence because of the changes in the Sentencing Guidelines concerning the amount of loss in "White-Collar" crimes (Amendment 792), and my role as a minor player in the "*Binday*" scheme (Amendment 794).

### PRELIMINARY STATEMENT

First and foremost, I want to thank the Court for ruling on my motions and ordering the government to respond to my 2255 Petition. My fear was that my motions had been lost in the *Binday* shuffle. As the government noted, Mr. Binday is up to his seventh or eighth attorney in this case, while I have had only one and I now am submitting these motions *pro se*. Second, I did not receive notice of the Court's decision until this week and I realize there is a 14 day limit on Local Rule 49.1(d), which is why I am having friends outside of the prison send this in because there is a big inspection happening at Canaan and I am currently unable to enter our unit.

I beg the Court's indulgence if this Motion for Reconsideration does not arrive within the 14 day limit.

Third, I wish to draw the Court's attention to not only Judge Lynch's opinion for the Second Circuit in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), but also other recent Second Circuit cases that the Court may have overlooked, and testimony that the Court heard but might have forgotten. The evidence presented at trial was clear and unequivocal, Mr. Binday controlled the investors, the applications, and the insureds. For my efforts in the so-called "Binday Scheme", I received only $600,000 in compensation for services rendered to the Binday Agency. The alleged crime was depriving the carriers of their right to control their assets by depriving them of allegedly valuable economic information. The situations that Your Honor refers to in the decision are people that were friends of mine that I actually helped to benefit from the policies on their lives. If someone like Joseph Collins can receive only a year for the billion dollar REFCO fraud (see *United States v. Collins*, 581 Fed. Appx. (2d. Cir 2014)), and Raj Gupta could receive only two years for the $350 million insider trading scandal (see *United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014)), then I feel that I have been over-sentenced by a wide margin, and would respectfully ask this Court to grant my Motion for Reconsideration and reduce my sentence to two years based on Raj Gupta, who was just featured in a *Wall Street Journal* article this past week now that he is out of prison.

## I.   POINTS OVERLOOKED BY THE COURT

Judge Lynch, in writing for the Second Circuit, makes it clear that the money or property sought by Binday was the commissions issued on the policies, and Judge Lynch also makes it clear if the *Binday* scheme was just getting the carriers to issue policies they might not normally issue, that would not be mail or wire fraud:

"Misrepresentations amounting only to a deceit are insufficient" to support conviction for mail or wire fraud because "the deceit must be coupled with a contemplated harm to the victim." *Starr*, 816 F.2d at 98. "Where the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *Binday* at 578.

While I respectfully disagree with Judge Lynch on the "right to control assets" theory of fraud, that is not what this Motion is about. Mr. Binday's investors put in $65-70 million of premiums to create the commissions and the death benefits that caused the $32 million in losses in this case. But, the crime was the lying to the carriers on the applications and for that part of the crime, I received a total of $600,000 from Binday's Brokerage Agency. Judge Lynch is very clear that Binday controlled everything and received 100% of the commissions. The Court also overlooked the testimony of Tracy Robinson who testified that she took instructions from Mr. Binday and Mr. Binday alone, and that she and the other employees of Binday's Agency processed 100% of the applications in this case. There was no "conspiracy" here; Binday was the boss and the so-called "Mastermind", which leads to the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

*Honeycutt* is important for two reasons. In its unanimous decision, the Supreme Court discussed the definition of the word "obtain" and said that property for the purposes of a crime must actually be "obtained" or "acquired" by the person committing the crime for the purposes of forfeitures. But, Justice Sotomayor goes a step further in describing the analogy of the "Student and the Mastermind" growing marijuana on a college campus. The Mastermind collects $3 million in unlawful profits but pays the student only $300 per month for a grand total of $3,600. While the Mastermind (Binday) might be responsible for the entire $32,000,000 of losses in this case, the Student (Kergil) should only be responsible for only $600,000 in losses

3

and I should have been sentenced on that basis – under the new Sentencing Guideline Amendment.

Judge Patti Saris, Chair of the Sentencing Commission, made the same points in discussing the *Collins* case and the Tenth Circuit's decision in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011) for White-Collar fraud losses under Amendments 791 and 792 and she also uses a "farmer analogy" under Amendment 794 for a person having a minor role in a criminal enterprise. While I know Your Honor believes that I am guilty of a crime, I should only have been sentenced based on a minor role and only based on $600,000 of losses. It makes no sense to sentence both me and the "Mastermind" Binday on the same $32 million when his Agency received 100% of the commissions that Judge Lynch said was the property in this case.

## II.   ALGAHAIM AND FINAZZO

Respectfully, the Court also overlooked the Second Circuit's decisions in *United States v. Algahaim*, 842 F.3d 769 (2d Cir. 2016) and *United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017). In *Algahaim*, two defendants pled guilty to fraud and received sentences of **30** months and **21** months for Food Stamp (SNAP) fraud. While the Second Circuit affirmed their convictions, the Second Circuit remanded the case back to the District Court to consider a Non-Guidelines sentence. There are many other examples that I believe the Court has overlooked and should examine in this regard, but suffice it to say that, while the Court may find me guilty of mail and wire fraud, the amount I actually "obtained" suggests that I should have received a much lower sentence.

Finally, this brings me to the Second Circuit's recent decision in *Finazzo*, where Finazzo really was ripping off his employer to the tune of $14 million by directing business to his secretly-owned company. The Second Circuit's decision in *Finazzo* goes to great lengths to

4

discuss the "tangible harm" theory of *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994), where a consultant for a Long Island village did not disclose his personal interest in a piece of property just like how Finazzo did not disclose that he secretly owned a supplier for Aéropostale that he directed business to.  While I will save my arguments on *Mittelstaedt* for my 2255, I respectfully ask the Court to review the Second Circuit's opinion in *Finazzo* to see that Finazzo really did receive over $14 million from his secret business interests and received a very stiff eight year sentence.  There are some very interesting quotes from *Finazzo* that I look forward to bringing to the Court's attention in my 2255 Reply Brief, but it makes no sense that I should be sentenced to nine years in a scheme where the carriers actually profited from the policies all lapsing and Binday's firm kept all of the commissions.  Please also see *United States v. Bryson*, 2015 WL4619637 (2015) and *United States v. Hixon*, where a well-known hedge fund manager indicted for $300 million in losses and a well-known Evercore partner convicted of insider trading each received a sentence of 30 months. I believe I am entitled to have my sentencing reviewed under Section 3582 and that the Court has the power to grant this Motion for Reconsideration and then to review my sentence based on recent cases the Court may have overlooked.

I wish to thank the Court again for reviewing my Motions, and ordering the government to respond to my 2255 Petition.

/s/ James Kevin Kergil
James Kevin Kergil
Reg. No. 66387-054
Petitioner *Pro Se*
Incarcerated Inmate
FPC Canaan
P.O. Box 200
Waymart, PA 18472





U.S. POS
ZIP 0600
02 1W
0000139

AUG 29 2017
RECEIVED

Clerk of the Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Joseph Castagno
10 Tower Lane Suite 100
Avon, CT 06001