# Government Exhibit A

ALANA W. ROBINSON
Acting United States Attorney
DANIEL E. ZIPP
Assistant United States Attorney
California Bar No. 262118
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Tel: (619) 546-8463
Email: Daniel.Zipp@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 13-CR-0424-JLS |
|---|---|
| Plaintiff, | Date: July 28, 2017 |
| v. | Time: 9:00 a.m. |
| JEFFREY B. KELLER, | SENTENCING MEMORANDUM |
| Defendant. | |

NOW COMES plaintiff United States of America, by and through its counsel, Acting United States Attorney ALANA W. ROBINSON and Assistant United States Attorney Daniel E. Zipp, and hereby files the following sentencing memorandum, which is based on the files and records of this case.

## I.

## STATEMENT OF FACTS

In 2011, the Internal Revenue Service (IRS) began an investigation into the tax activities of Jeffrey Keller (Keller), based on a whistleblower complaint from one of Keller's associates. According to the informant, Keller's firm, Wallsworth Cobb Investment Management, LLC, used the services of a local attorney named Kasra Sadr to hide millions of dollars in income using offshore accounts. Specifically, Keller

would regularly send income to accounts controlled by Sadr and claim schedule C deductions for consulting and legal fees. In reality, Sadr did not provide consulting or legal services but simply held Keller's funds and returned them, minus a commission, into different accounts. Over the course of tax years 2007 through 2009, Keller evaded tax liability on millions of dollars in income, resulting in a tax loss to the IRS of approximately $995,000 dollars.

As the IRS began its investigation into Keller's tax evasion, agents also discovered issues with the *source* of Keller's income. At the time, Keller was a licensed insurance broker, with agreements with several major life insurance agencies. Industry practice dictates that when an insurance broker originates a new life insurance policy, he or she typically receives an immediate commission roughly equal to the first full-year of insurance premium payments on the policy. For life insurance policies on high net-worth individuals, this broker's commission can be equal to hundreds of thousands of dollars, paid up-front, at the time the policy is signed.

The source of Keller's substantial income was a scheme involving a concept called stranger-originated life insurance ("STOLI"). Generally speaking, STOLIs are life insurance policies purchased—and most commonly subsequently sold—by third-party investors, who have no interest in the person insured. These investors make the regular premium payments and then they receive the payout whenever the insured eventually dies. Keller originated a large number of these STOLI policies for elderly individuals and earned a profit through (1) the immediate commissions earned upon issuance of the policies, and (2) the sale of the policies on the secondary market. As outlined below, however, both sources of profit depended on multiple fraudulent misrepresentations to the insurance providers who issued the policies.

First, in order to earn the largest possible commission, Keller sought to originate multi-million dollar life insurance policies, with correspondingly large first-year premiums. To do so, he needed to find high net-worth individuals who the insurance providers would be willing to insure for such large amounts. When those high net-

worth individuals proved elusive, Keller used "finders" to recruit elderly clients of modest means (the Straw Buyers) and simply falsified their income and net worth on the insurance application. The Straw Buyers generally consented to the scheme since they did not actually have to make any premium payments on the policy, and because they typically received some direct payment—usually at the conclusion of the two-year contestability period for their policy. Second, in addition to falsifying the financial information of the Straw Buyers, Keller also submitted other material misrepresentations to the insurance companies. Many of the insurance applications included explicit questions intended to ferret out potential STOLI investors. On the applications submitted by Keller, he provided materially false responses, in order to hide the fact that the policies were being funded by outside investors.

One reason that insurance companies seek to avoid STOLI policies, is that a significant percentage of individuals who purchase *personal* life insurance policies eventually stop making payments and allow the policy to lapse before they die. Insurance companies know of this fact, and they set their premium rates accordingly. In contrast, STOLI investors are much more likely to continue payments on their accounts until the insured actually dies, so that they can earn a return on their investment. Nevertheless, in this case, the investors for all of the policies Keller created stopped payment before the insured party died, and the insurance companies were never required to pay death benefits. Overall, while Keller earned substantial income from the fraudulent scheme, the income he received was less than the total premiums paid by investors, and none of the insurance companies suffered any financial loss as a result of the scheme.

## II.

## SENTENCING RECOMMENDATION

Pursuant to the plea agreement, the United States calculates Keller's base offense level and specific offense characteristics as follows: For the wire-fraud conspiracy count, related to the STOLI scheme, the United States recommends an

offense level of 20, based on a gain of more than $550,000. For the tax evasion scheme, the United States also recommends an offense level of 20, based on a tax loss of more than $550,000. Under the grouping provision of § 3D1.4, this results in a combined offense level of 22. The United States recommends a three level acceptance of responsibility under § 3E1.1. This results in a guideline range of 30 to 37 months' custody.

In addition, the United States recommends a three level reduction, under 18 U.S.C. § 3553, for two reasons. First, as outlined above, the nature and circumstances of the offense were mitigated, to some extent, because none of the insurance companies actually lost any money as a result of Keller's misrepresentations. Second, there is a need to avoid unwarranted sentencing disparities, specific to this case. On March 7, 2014, this Court sentenced Keller's co-defendant, Stuart Steinfeld to 60 days' custody. Although Steinfeld did not earn as much income as Keller and occupied a lesser role in the STOLI scheme, his sentence was dramatically less than even the low-end of the guidelines for Keller. Furthermore, there were four additional defendants, Kasra Sadr, Byron Frisch, Kristian Giordano, and Brenda Berrera, all of whom were indicted separately from Keller based on a similar, related STOLI scheme. The Court dismissed the indictment against these defendants without prejudice in 2016, and the United States elected not to refile charges. Thus, the fact that Keller's co-defendant received a sixty-day sentence, and several of co-conspirators received no sentence at all, weighs in favor of a sentence below the applicable 30-month guideline. For all these reasons, the United States recommends the court depart downward three levels under 18 U.S.C. § 3553.

### IV.
### CONCLUSION

For the reasons outlined above, the United States recommends the court impose sentence at the low-end of the applicable guideline range.

| | | |
|---|---|---|
| 1 | DATED: July 20, 2017 | Respectfully submitted, |
| 2 | | ALANA W. ROBINSON<br>Acting United States Attorney |
| 3 | | |
| 4 | | */s Daniel E. Zipp* |
| 5 | | DANIEL E. ZIPP<br>Assistant U.S. Attorney |

- 5 -

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0424-JLS |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| JEFFREY B. KELLER, | |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, Daniel E. Zipp, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Government's Sentencing Summary Memorandum dated July 20, 2017, and this Certificate of Service, dated July 20, 2017, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Michael L. Lipman
*Counsel for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 20, 2017.

/s/ Daniel E. Zipp
DANIEL E. ZIPP
Assistant United States Attorney

- 6 -