UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITES STATES OF AMERICA,<br><br>-against-<br><br>MICHAEL BINDAY, JAMES KEVIN KERGIL, and MARK RESNICK,<br><br>Defendants. | Criminal Action No. 12-cr-152 (CM)<br><br>Hon. Colleen McMahon<br><br>ECF Case |

**MICHAEL BINDAY'S MOTION FOR AN ORDER RECOMMENDING THAT THE BUREAU OF PRISONS GRANT BINDAY A 30-DAY FURLOUGH**

THE NORTON LAW FIRM
   David W. Shapiro
299 Third St., Suite 106
Oakland, CA 94607
Tel.: (415) 906-4900
Email: dshapiro@nortonlaw.com

*Attorney for Defendant*
*Michael Binday*

## MOTION FOR COURT ORDER RECOMMENDING A FURLOUGH

Michael Binday, by and through his counsel, David W. Shapiro, hereby moves this Court for an order recommending to the Bureau of Prisons ("BOP") that it furlough Binday for 30 days in light of the dire and worsening COVID-19 coronavirus pandemic and Binday's medical condition, which includes type II diabetes.

The government advised Binday's counsel that it will take a position after it reviews Binday's motion.

Mr. Binday waives his and his counsel's physical presence at any hearing ordered. Counsel is available by telephone.

This motion is based on the attached memorandum, the accompanying declaration of David W. Shapiro, and all files and records in this case, and any further information as may be presented to the Court.

## MEMORANDUM IN SUPPORT OF MOTION

Michael Binday respectfully requests that this Court recommend to the BOP that Binday be furloughed immediately because of the threat to his life and health from the mounting infections and high-risk conditions at FCI Otisville caused by the COVID-19 coronavirus. The health crisis is an "urgent situation" within the meaning of the furlough statute and regulations, and this Court is authorized to recommend a furlough, at least in connection with a criminal court proceeding. Since this Court is authorized to modify Binday's sentence pursuant to 18 U.S.C. § 3582, and Binday may soon file such a motion, and since the BOP regulations anticipate input from the Court regarding furloughs, the Court has the authority to make a recommendation to the BOP to grant a furlough at this time.

In short, the threat to Binday's life, given his age and medical condition, outweighs the Warden's reason for denying Binday a furlough – a now four month-old "shot" (infraction notice) for having had some cole slaw in his cube. Binday should not face serious illness or death because of that minor infraction.

## FACTUAL BACKGROUND

Michael Binday was sentenced to 144 months in prison. He surrendered to the BOP on July 1, 2016. On May 1, 2020, he will have served 46 months or about 32% of his prison sentence. His anticipated release date is September 20, 2026. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

Binday is 56½ years old. Before his conviction in this case, he had no criminal history. Binday was originally designated to Ft. Dix Camp, but was transferred to the camp at FCI Otisville after he was beaten by another inmate in an anti-Semitic incident.

In January 2020, Binday was given a blood test by the BOP medical facility. That test showed he has diabetes. Shapiro Dec. Ex. 1. Binday's physician, Dr. Jonathan A. Bradlow, has provided a letter detailing Binday's medical conditions: "most concerning, [Binday has] Type II Diabetes (which is causing his severe hyperchorsterolemia), which is not being treated at all. He does need ongoing care and given his diabetes, he is at risk for complications of COVID-19." Shapiro Dec. Ex. 2. Dr. Bradlow opines that Binday should be confined to his home and receive medical care to mitigate the "highly virulent and lethal worldwide pandemic."

While at Otisville, Binday assiduously complied with the rules; however, on one occasion, in January 2020, his counselor issued him a "shot" for having food (cole slaw for his sandwich) in his cubicle. That shot resulted in a sanction of three months without commissary.

Binday accepted the shot and the punishment without an appeal and with the understanding that the three-month sanction would resolve the issue.

On April 1, 2020, Binday sent a request in writing to Warden Petrucci and to Otisville Camp Administrator Schreffler asking for both compassionate release and home confinement under the CARES Act, which expanded the BOP's authority to place inmates on home confinement (part of the COVID stimulus bill, https://www.congress.gov/bill/116th-congress/house-bill/748/text).

On April 13, 2020, Binday sent a written request to Warden Petrucci and Camp Administrator Schreffler saying that he had heard the rules for home confinement were changed by the Attorney General to allow inmates who had completed 25% of their sentence to qualify for home confinement under the CARES Act. By that date, Binday had completed 31.25% of his 12-year sentence; the percentage is higher if his anticipated good time credits are taken into account. In addition, Binday will be 60 years old in 3½ years, and he will likely qualify for early release to home confinement because of his age (under the First Step Act). He emphasized that he met the CDC definition of "at risk" and had other health issues.

On April 16, 2020, Binday and all the other inmates were told they would be furloughed. He wrote to the Warden and the Camp Administrator, asking if he could get medical care while he was on furlough. The next day, the institution told Binday he was denied a furlough.

On April 23, 2020, Binday appealed the denial of the furlough. He emphasized his health issues and the danger of returning to the camp at FCI Otisville. He noted that the camp carried great risks to the inmates and to Binday in particular: it has not been cleaned and is still a potential source of infection; camp inmates were returned before the end date of their planned quarantine; the temperature checks (the primary basis on which to diagnose disease) are

3

insufficient, since the CDC has advised that infected people may be asymptomatic but still infectious; and staff members may also be asymptomatic but infectious.

In his appeal, Binday said that he had not appealed the January 2020 shot but noted that it was for having cole slaw in his cube. He stated that kind of violation is often overlooked or informally resolved, and he explained that his desire for a turkey sandwich with cole slaw should not result in his having to face a risk to his life and health.

On April 24, 2020, the Warden denied his appeal, saying, "Your furlough was denied. Your medical issues will continue to be addressed at the institution."

Since April 24, about 100 of the inmates at FCI Otisville camp have been furloughed; about 12 remain. Those who remain – who were not furloughed – were retained because they had received shots for rules infractions. The institution apparently did not analyze the health risk to those remaining inmates of being kept in the institution, but rather chose to furlough all of the inmates except those with rules infractions. Binday had a mask to wear for multiple days (beyond its useful life), but does not now have a mask to wear.

## **THE COVID-19 PANDEMIC AND THE DANGER TO PEOPLE IN CLOSE-CONTACT INSTITUTIONS**

As of April 24, 2020, least 15,740 people have died in the New York as a result of COVID-19 (Google "deaths in New York coronavirus"). In Orange County, where Otisville is located, there are 6816 confirmed cases and 268 deaths. https://coronavirus.jhu.edu/us-map. The BOP reports five inmates and 12 staff have confirmed cases of the virus, https://www.bop.gov/coronavirus/. Testing in federal prisons has been sketchy, however. "The federal prison system, confronted with mounting infections and deaths attributed to the coronavirus, is expanding testing to seek out previously hidden asymptomatic inmates in an attempt to control the spread." According to USA Today, "At the time of the announcement, the

4

BOP reported that 620 inmates and 357 staffers had been infected, while 24 prisoner deaths have been attributed to COVID-19's spread."

https://www.usatoday.com/story/news/politics/2020/04/23/coronavirus-federal-prisons-expand-testing-asymptomatic-inmates/3015287001/.

There is no clear end in sight. The Centers for Disease Control and Prevention ("CDC") warn that the virus causes "most severe illness … in adults 65 years and older and people of any age with serious underlying medical problems." https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html. Diabetes, hypertension, and heart diseases are considered serious underlying medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Public health experts and public officials have imposed or recommended that people isolate, quarantine, and socially distance themselves from others. None of those preventative steps can properly be implemented in prison. To the contrary, prisons are designed to create close contact with other inmates and guards both to oversee inmates' conduct and to remind inmates why they have been deprived of their freedom. The virus thrives in densely populated institutions – such as homes for the aged and prisons – and those overseeing the institutions cannot relieve the stresses except through releasing those subjected to the crowded conditions.

The CDC has identified the risk factors most likely to result in death, and they include people living in "densely populated areas," people with diabetes, and people 65 years or older: "People with diabetes whose blood sugar levels are often higher than their target are more likely to have diabetes-related health problems. Those health problems can make it harder to overcome COVID-19." The CDC has also identified magnified problems for racial and ethnic minorities living in close quarters – a situation even more significant in a prison: "People living in densely

populated areas may find it more difficult to practice prevention measures such as social distancing." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

A person who is under 65 is not much safer than one who is older than 65, if at all. https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-and-covid-19-younger-adults-are-at-risk-too ("Coronavirus infections requiring hospitalization are not only possible in younger adults, but the rate of these cases is higher now that the virus is spreading across other countries.").

Living conditions at FCI Otisville increase the risk of contracting the virus because of the closed conditions of confinement. Binday is at high risk for complications if he is infected with the virus.

### CONCERNS ABOUT CONDITIONS AT FEDERAL PRISONS AND UNDERREPORTING BY THE BOP

On April 21, 2020, Senators Durbin and Grassley commended the DOJ Inspector General for opening a review of the BOP's compliance with best practices. They asked him also to review whether BOP has implemented legislative and executive directives, as well as guidance from the Centers for Disease Control and Prevention (CDC). Shapiro Dec. Ex. 3. "We are concerned that BOP is not fully and expeditiously implementing relevant statutory authority and directives from the Attorney General. We are also concerned about how closely BOP is following CDC guidance or taking other preventive measures to adequately protect BOP staff and inmates from the spread of COVID-19." *Id.* at 2.

On April 19, 2020, Judge Nathan called the BOP's procedures relating to quarantine and release "Kafkaesque" and the prison conditions "dangerous." *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *1 (S.D.N.Y. Apr. 20, 2020).

Noting that the institution where Scparta is housed requires inmates to line up in close proximity to receive food and medicine multiple times a day, and that Scparta shares communal spaces like toilets, sinks, and showers with other inmates, and that Scparta shared a cell, Judge Nathan granted Scparta's motion for compassionate release without requiring him to wait 30 days for the inmate to exhaust his administrative appeal rights.

Like the defendant in *Scparta*, the inmates in the FCI Otisville camp line up for food, medicine, temperature checks, telephones and other events. The inmates share showers, sinks and toilets. They also share a communal space of cubicles, where they sleep and where face masks are not required, the eating area (with five telephones near each other), the library, the computer room, and other rooms. Masks are supposed to be part of the uniform, but usage is at best irregular among inmates and staff. Gloves are not issued to inmates and are not used by regular staff. Medical personnel on occasion use gloves, but not for most interactions such as temperature checks.

## **MEDICAL CONDITIONS AND CARE AT BOP**

Binday's January 2020 medical report from the medical facility at the BOP reveals that his hemoglobin A1C is 6.6. The report itself states that Binday suffers from type-2 diabetes (">6.4 Diabetes"). Shapiro Dec. Ex. 1. *See* https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 ("An A1C level of 6.5 percent or higher on two separate occasions shows that you have diabetes."). The BOP has not performed another blood test to determine if Binday's A1C level had increased or decreased, which is not adequate medical care.

According to Up To Date, a service for physicians and others reporting on contemporary standards of medical care, "Diabetes is one of the major causes of early illness and death worldwide. Type 2 diabetes affects approximately 8 percent of the United States population …."

[https://www.uptodate.com/contents/screening-for-type-2-diabetes-mellitus?search=a1c&source=search_result&selectedTitle=2~150&usage_type=default&display_rank=2](https://www.uptodate.com/contents/screening-for-type-2-diabetes-mellitus?search=a1c&source=search_result&selectedTitle=2~150&usage_type=default&display_rank=2).

Diabetes is one of the conditions that greatly increase a person's risk of death if he is infected with the COVID-19 virus. The American Diabetes Association has issued guidance for incarcerated people suffering from diabetes, recommending that they "avoid crowds" because they "face a higher chance of experiencing serious complications from COVID-19." They are "more likely to experience severe symptoms and complications when infected with the virus. …. Viral infections can also increase inflammation, or internal swelling, in people with diabetes." Shapiro Dec. Ex. 4.

The ADA expressly warns that people "detained in crowded locked facilities *are* at significantly elevated risk of contracting infectious diseases like COVID-19 because of the close confines in which they live." *Id*. at 2. It urges prisons to "explore all possible strategies to release people with diabetes …." *Id*.

In addition, Binday has a hip injury that requires surgery, but cannot get the medical attention that the injury requires. The prison took x-rays and eventually prescribed high dose ibuprofen and acetaminophen for pain relief. It took nearly three years for the institution to give Binday a CT scan and then an MRI. Those tests revealed Binday has a torn labrum. Two scheduled appointments with an orthopedist (in January 2020 and early April 2020) were cancelled by the institution. The appointment has not been rescheduled. The doctor at the institution advised Binday that he needed arthroscopic surgery.

There is little chance, if any, that Binday will receive any real medical attention given the failure of the institution to treat him to date or even provide follow-up diabetes testing. The

ongoing uncertainty about testing and treatments at federal prison facilities represents an urgent, emergency situation.

## THIS COURT'S RECOMMENDATION OF A FURLOUGH

If the Court recommends a furlough, the BOP is more likely to reverse its decision denying Binday a furlough. At the time of sentencing, this Court cannot have foreseen (or considered) that Binday might lose his life from a novel and virulent virus while serving a prison sentence, nor can it have considered that Binday would be treated so differently from other inmates because of a small rule infraction. The Section 3553 sentencing factors do not embrace possible serious illness or death from a highly infectious virus while in prison as a good reason to impose a prison sentence. Indeed, if any judicial officer were advised that inmates at particular institutions would be kept in dangerous and possibly deadly situations, then she or he would likely fashion a non-incarceration sentence whenever possible.

## BINDAY'S PLAN IF FURLOUGHED

If the Court grants this motion, and the BOP furloughs Binday, then Binday's wife, Karen, will pick Binday up at the facility. He will immediately implement all social distancing procedures that are possible (including wearing a mask and keeping separate from everyone other than his wife); he will comply with all travel and reporting restrictions imposed by the BOP; and he will be available for telephone or other monitoring that the BOP deems necessary. He will self-surrender if and when the BOP or the Court determines it is safe to do so.

## LEGAL STANDARD APPLICABLE TO THIS MOTION

18 U.S.C. § 3622 authorizes the temporary release of prisoners in the custody of the BOP if such release "appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him …." The statute authorizes a

furlough for an inmate to "obtain medical treatment not otherwise available" or to engage in any "significant activity consistent with the public interest." If the prisoner meets these requirements, he may be authorized to "visit a designated place for a period not to exceed thirty days, and then return to the same or another facility …." *Id*. §3622(a)(3) and (6).

The regulations implementing the statute, 28 C.F.R. § 570.30 et seq., authorize an emergency furlough, which is defined as "[a] furlough allowing an inmate to address a family crisis or other urgent situation." Those regulations anticipate that the Court may issue a recommendation for a furlough, at least to "appear in or prepare for a criminal court proceeding." *Id*. § 570.33(h). Sentencing is part of a criminal proceeding, and this Court may modify Mr. Binday's sentence pursuant to 18 U.S.C. § 3582. Thus, this Court is authorized to recommend a furlough for individuals now caught up in the pandemic.

There cannot be a dispute that the COVID-19 pandemic has created an emergency situation for prison inmates. There also cannot be a dispute that this Court may make recommendations to the BOP about furloughs, especially when a Section 3582 motion is anticipated by the Court and an inmate. The only question now is whether there are facts disfavoring a furlough here; that is, whether the factor the Warden used to deny a furlough (food in an inmate's cell four months ago) outweighs the emergency facing Binday (exposure to a potentially deadly virus). There are not.

The decision whether to furlough someone in an emergency situation should not hinge on whether the inmate violated internal regulations months ago regarding a small amount of food in his cubicle. The question is whether the inmate will honor the trust imposed on him by his release. Certainly, Binday is trustworthy to be released to his family so that he may avoid a

potentially deadly situation. His history while on bail in the criminal case against him attests to that fact.

There are few cases that have considered this situation; however, Judge Otero, in the Central District of California, recently granted the relief Binday seeks here. He granted an emergency motion by an inmate, over the government's objection, and recommended to the BOP that it furlough Joel Gillis for 30 days. *United States v. Gillis*, 2:14-cr-00712-SJO, Doc. 161. Shapiro Dec. Ex. 5.

In *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020), the petitioner brought a putative class action habeas petition pursuant to section 2255 against the Bureau of Prisons seeking release from custody because of the pandemic. The petitioner acknowledged that release might take different forms: "while some inmates might be placed in home confinement others should be furloughed and that in all instances such 'release' could be temporary." *Id*. at *7.

The court in *Wilson* concluded that the sub-class of inmates over 65 years of age and those with medical conditions such as diabetes properly raised a claim for habeas relief. The court granted petitioner's motion, in part, as to the subclass of inmates with medical conditions and ordered the respondent to identify the members of that subclass and evaluate each person's eligibility for release or transfer.

In analogous situations, the courts have generally granted release to people in Binday's situation.

For example, on March 24, 2020, the Ninth Circuit sua sponte ordered the release of an immigration detainee "[i]n light of the rapidly escalating public health crisis, which public health

authorities predict will especially impact immigration detention centers." *Xochihua-Jaimes v. Barr*, No. 18-71460, 2020 WL 1429877, at *1 (9th Cir. Mar. 24, 2020).

In *United States v. Sandoval*, 3:18-cr-00449-HZ (D. Oregon 3/12/2020), the judge varied downward from a prison sentence to probation "because of the pandemic."

On March 30, 2020, in *United States v. Muniz*, No. 4:09-cr-199-DJB Doc. 578 (S.D.Tex. Mar. 30, 2020), the court granted Muniz's second 3582 motion because of the pandemic and because he suffered from diabetes and hypertension: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection. …. The virus's spread at the Cook County jail in Chicago provides an alarming example: in a single week, the county jail went from two diagnoses to 101 inmates and a dozen employees testing positive for the virus." The court noted reports that the "virus has already begun infiltrating federal prisons; in one prison in Louisiana, an inmate died after testing positive for the virus and at least 30 other inmates and staff have tested positive." Shapiro Dec. Ex. 6.

## CONCLUSION

The lack of much precedent for a judicial recommendation of furlough is not surprising given the unique, dangerous, and opaque nature of this pandemic. Congress quickly passed the CARES Act loosening the bonds that ordinarily tie a sentenced inmate to an institution almost to the end of the sentence imposed. That policy shift strongly supports a broad reading of the Court's authorization to make a recommendation to the BOP. The BOP's furlough regulations expressly envision recommendations from this Court; Binday asks only for that recommendation

at this point. If he is released for 30 days on a furlough, then he will be better able to assess the applicability of Section 3582 to his situation and whether to file a request under that statute.

Dated: April 29, 2020

Respectfully Submitted,
THE NORTON LAW FIRM

By: /s/ *David W. Shapiro*
David W. Shapiro

Attorney for Defendant Michael Binday

cc: AUSA Eun Choi (via ECF)